CASCILDA LARAWAY, Appellant, v. S. P. ZENOR, Sheriff, EDWARD H. LITCHFIELD, Intervener.

Adverse Possession: COLOR OF TITLE: *Husband and wife.* A quit-claim deed by a husband to his wife, of land held by him under a contract for its purchase, which, to her knowledge, had become subject to forfeiture because of his non-performance, is insufficient to vest her with color of title on which to rest a claim of adverse possession, based on husband and wife, going into possession, as against the other party to the contract of purchase or his successors, though she paid for the assignment made to him, with her separate property

*Appeal from Boone District Court.*—HON. B. P. BIRD-SALL, Judge.

THURSDAY, DECEMBER 10, 1896

THIS suit was brought by the plaintiff to enjoin the execution against her by the defendant Zenor,

sheriff. of Boone county, of a writ of possession
involving the east half of the southwest quarter of
section thirty-five, township eighty-two, range twenty-
seven—eighty acres of land situated in that county.
The writ was issued upon a judgment obtained in the
district court in Story county, in a suit between the
intervener, Edward H. Litchfield, as plaintiff, and
Isaac Laraway, the husband of this plaintiff, as defend-
ant.   Plaintiff, after alleging that she was in no sense
bound by said judgment, and that the sheriff had no
authority to remove her from the land thereunder,
also claimed to be the owner of the property in her
own right, and asked for a temporary writ of injunc-
tion restraining the sheriff from removing her from
the land in question.   An order was made in cham-
bers, for the issuance of the injunction, and at the
first term following the commencement of the suit,
Edward H. Litchfield, claiming to be the owner of the
land, intervened, alleging his ownership, denying that
plaintiff had any interest in the property, asking that
his title be quieted against plaintiff's claim, and that
the injunction be dissolved.   Upon these issues, thus
stated in brief, trial was had, which resulted in a
decree in favor of the intervener, whereby his title to
the land was quieted and confirmed as against the
plaintiff's claim, and the injunction theretofore
obtained, dissolved.   Plaintiff appeals.—*Affirmed.*

   *A. J. Holmes* and *Shortly & Harpel* for appellant.

   *Gatch, Connor & Weaver* and *Dyer & Stevens* for
appellees.

   GIVEN, J.—I.   As stated by counsel for plaintiff,
the only question in the case is, not whether the plain-
tiff could have been removed under the writ of pos-
session in the suit against her husband, nor whether

the injunction procured by her should have been vacated, but whether the plaintiff, or the intervener, is the true owner of the property. It is admitted by plaintiff that the patent, or government title, is in the intervener, and that the sole question for determination by this court, is that of the validity of the claim of plaintiff to ownership by adverse possession. Plaintiff's claim rests upon the following facts: G. W. Rowley entered into a contract in writing, July 27, 1874, with Edwin C. Litchfield, the then owner of the eighty acres of land in controversy, for the purchase of the same for one thousand dollars, to be paid part in cash, and the balance in eight equal annual payments, with interest, payments commencing on the first day of January, 1876. Said contract provides that the same will become forfeited by non-payment of any of said installments, or the taxes. Rowley took and held possession of the land until December 16, 1874, when, with the consent of Edwin C. Litchfield, he assigned said contract to A. A. Wilson, who agreed to fully perform the covenants thereof. Mr. Wilson went into possession of the land, and continued to occupy it until his death, October 19, 1877. On this contract, interest was paid as follows: February, 1875, twenty dollars; January, 1876, twenty-five dollars; and January, 1877, one hundred dollars. No other payments were made. July 15, 1878, Fannie Wilson, widow, Carrie E. Clark, daughter, and Isaac Clark, her husband, sole heirs of A. A. Wilson, with the consent of Edwin C. Litchfield, assigned said contract to Isaac Laraway, husband of plaintiff, he agreeing to perform all the covenants thereof. Soon thereafter, Isaac Laraway and the plaintiff, with their family, went to live on said land, and have ever since resided thereon. Intervener Edward H. Litchfield became seized of the interest of his father in said land on his death. Isaac Laraway failed to make any of the

payments called for by said contract, by reason of which
it became forfeited by its terms. On August 26, 1879,
Isaac Laraway entered into an agreement in writing
with intervener for the purchase of said land for the
consideration of one thousand three hundred dollars.
One hundred and thirty dollars of this amount was to be
paid January 1, 1881, and the balance in nine equal
annual payments commencing January 1, 1882, with
interest. This contract also provides that it shall
become forfeited by failure to pay any of the install-
ments or taxes. Isaac Laraway failed to make any pay-
ments whatever upon this contract. Isaac Laraway
having failed to make the payment due January 1,
1881, intervener, on January 24, 1881, brought an action
against him to recover possession of the land, and
recovered judgment therefor, December 7, 1886. A
writ to place Edward H. Litchfield in possession was
issued on that judgment, and this action was origi-
nally brought to restrain the execution of that writ.
Thus far it is entirely clear that plaintiff has no inter-
est or possession of the land except as wife of Isaac
Laraway, and that that interest and right of possession
has been fully forfeited. Plaintiff alleges, as the
basis of her ownership and right to possession of the
land, as follows: That on and prior to the third day of
August, 1878, she was the sole owner of a certain tract
of land in Missouri; that on that day, in pursuance of
an agreement between her and the said widow and
heirs of A. A. Wilson, deceased, she conveyed to said
Fannie Wilson, said Missouri land; that in considera-
tion thereof, said Fannie Wilson, Carrie E. Clark, and
Isaac Clark conveyed to her by deed all their right,
title, and interest in and to the land in question; and
that soon thereafter she took, and ever since has held,
possession under and by virtue of said deed of con-
veyance. No such deed is produced, and plaintiff's
claim is that it in some way became lost before being

recorded, while intervener contends that no such deed was ever executed; and herein we have the controlling contention in this case. It further appears that on the thirtieth day of December, 1880, Isaac Laraway, for the recited consideration of seven hundred dollars, executed to his wife an absolute bill of sale of certain farm implements, one heifer, turkeys, chickens, eighteen hundred bushels of corn, and one hundred bushels of oats, "now in the possession of said Cascilda Laraway in the county of Boone and state of Iowa." This was recorded December 31, 1880. On the thirtieth day of December, 1880, Isaac Laraway also executed to his wife, for the recited consideration of nine hundred and seventy-five dollars in hand paid, a quit-claim deed for one hundred and sixty acres of land, including the land in question, which deed was recorded on the same day. Isaac Laraway had no claim whatever to the eighty, other than that in suit, except under a lease.

II. Prior to August 3, 1878, these parties had negotiated and agreed upon an exchange of Mrs. Laraway's Missouri land, for the Wilson interest in the land in controversy, and on that day met at the office of Cardell & Shortly, in Perry, Iowa, to complete the deal. Plaintiff contends that on that day Mrs. Wilson and Mr. and Mrs. Clark, executed to her a quit-claim deed for the land in controversy, in consideration of her deed to Mrs. Wilson for the Missouri land. There is a conflict in the evidence as to whether a deed was executed to the plaintiff, and we think the preponderance is in favor of the conclusion that there was not. There was no necessity for such a deed. The only interest that the Wilson heirs had was under the Rowley contract, and this interest would be fully transferred by an assignment of the contract. The Wilson heirs, either then or theretofore, assigned the Rowley contract to Isaac Laraway, and therefore were

not likely to make a deed to Mrs. Laraway. It is true
the assignment to Isaac Laraway and the consent of
Mr. Litchfield thereto, are dated at Ogden, Iowa, July
15, 1878; but we are satisfied that the assignment and
the agreement to perform the conditions of the con-
tract were written, ready for signatures, at Ogden,
where the consent of Mr. Litchfield's agent had to be
obtained, and that they were dated to correspond with
the date of the consent. Mrs. Wilson and Mrs. Clark
testified that they signed but one paper on August 3,
and this, we have no doubt, was the assignment of the
Rowley contract to Isaac Laraway. We are strength-
ened in the conclusion that no deed was executed to
the plaintiff from the fact that none is produced, nor
its absence satisfactorily accounted for. The plaintiff
insists that she had no knowledge of the Rowley con-
tract, nor of the assignments thereof, nor of the con-
tract between Mr. Litchfield and her husband. In
view of the relation of Mr. and Mrs. Laraway, and all
the facts and circumstances proven, it seems to us
incredible that she did not know of these transactions.
We are convinced that Mrs. Laraway conveyed her
Missouri land, in consideration of the assignment of
the Rowley contract to her husband, and with full
knowledge as to the nature of the contract, and that
the transfer was to him. This being true, her posses-
sion, as well as her husband's, was not adverse to, but
under the contract with, Mr. Litchfield. If the inter-
est of the Wilson heirs had been transferred by deed
to Mrs. Laraway, instead of by an assignment of the
contract to her husband, the condition would be the
same, for in neither case would her possession be
adverse to intervener. The evidence shows that Mrs.
Laraway exercised more control over the farm, in
working, renting, and caring for it, than farmers'
wives usually do; but this is explained by the fact that

her husband was absent from home much of the time, working at his trade and other employments.

III.   We next inquire as to the effect that should be given to the quit-claim deed from Laraway to the plaintiff.   The Rowley contract had long before become forfeited by its own terms, and neither plaintiff nor her husband had any rights under it.   This quit-claim deed was made December 30, 1880, and on January 1, 1881, the contract between Litchfield and Laraway became forfeited by failure to pay the one hundred and thirty dollars due that day.   All that Mr. Laraway had conveyed was his right under that contract, and, if that deed may be treated as a transfer of that interest, Mrs. Laraway has forfeited all rights under it by failing to make the payments required. Knowing, as we think she did, that Laraway had no interest in the land at that time except under his contract, she took the deed subject to it, and therefore it cannot be said that her possession under that deed was adverse to intervener.   She testifies that the purpose of that deed was to divest her husband of the one-third interest that he had, as her husband, in her property.   If such were the purpose, then clearly the deed does not furnish a color of title upon which to base ownership by adverse possession.   We are satisfied that the execution of this deed and the bill of sale were not good faith transactions, and that the deed was made and received with the hope of thereby, in some way, fabricating a claim of title.   It seems to us clear beyond dispute, that neither Mrs. Laraway nor her husband ever had a shadow of title to this land adverse to the title of Mr. Litchfield, that the only title they ever had was under the contracts with Mr. Litchfield, that the possession has been by Isaac Laraway, under said contracts, and that the plaintiff has had no other possession or claim of right except as the wife of Isaac Laraway.   The decree of the district court is AFFIRMED.